Lee v. School Trustees.

Irving Lee et al., appellants

v.

The Trustees of School District No. 1, in the County of Atlantic, respondents.

1. The common council of Atlantic City have no power to order money to be raised by taxation for the erection of school-houses. It requires a majority vote of the assembled inhabitants of the school district for that purpose.

2. Money raised under authority of the thirty-first section of the charter of Atlantic City (*P. L. of 1866 p. 330*) for school purposes, cannot be applied by the school trustees to the erection of school-houses.

On appeal from an order dismissing an order to show cause why an injunction should not issue, advised by Vice-Chancellor Bird.

*Mr. C. G. Garrison*, for appellants.

*Mr. D. J. Pancoast*, for respondents.

The opinion of the court was delivered by

Van Syckel, J.

The question in this case is whether the defendants have the right to appropriate moneys in their hands to erect a school-house, no authority having been given to them for that purpose, either by the voters of the said school district, or by the common council of Atlantic City.

The money which the trustees propose thus to apply is an unexpended balance in their hands, derived from its quota of the state fund, and from taxes imposed for school purposes by virtue of the 31st section of the city charter. *P. L. of 1866 p. 330.*

The charter of Atlantic City passed in 1866 provides for the election of three school trustees, without defining their power or duty.

The general school law of 1846, supplemented by the act of March 14th, 1851 (*Nix. Dig. 738*), then in force, expressly defined

Lee v. School Trustees.

the powers of school trustees. The defendants, therefore, in their official capacity, can exercise no authority in excess of that bestowed by the general school law, unless a grant for it can be found in the special legislation applicable to the municipal corporation within the limits of which they act.

Under the general law of 1851, the trustees could not appropriate moneys to the purchase of lands or the erection of a school-house without the vote of two-thirds of the assembled inhabitants of the district. This law remains unchanged except that a majority vote of the inhabitants now gives the requisite authority for such appropriation.

The seventh section of the school law of 1851 made it the duty of school trustees to apply all moneys appropriated to their district, or raised therein by taxation or otherwise, to the establishment and maintenance of free schools in such district, except only such part thereof as should be otherwise applied by virtue of the provisions in said law contained. Section 11 of the same act then authorizes the construction of school-houses by a two-thirds vote of the inhabitants.

Under the law of 1846 (section 9), it was the duty of school trustees to provide a suitable room where school could be taught, but no express power was given to raise money by tax to build school-houses or buy land therefor. That was a special authority, conferred by the general law of 1851 to be exercised only in the designated way.

Such was the law of this state when Atlantic City was chartered, and it has not been materially modified by our general legislation, so far as the question here involved is concerned. That law must operate as a restraint upon the authority of the defendants unless they are relieved from it by the provisions of the city charter.

Section 31 of the city charter of 1866, provides:

" That said city council may direct to be raised, by taxation, for school purposes, any sum not exceeding $10 per head for every child in said city between the ages of five years and twenty-one; and that the said city shall be entitled to its just proportion of the annual appropriation of the school fund of this state, and to its just proportion and quota of the interest on the surplus revenue

apportioned to and received by the state of New Jersey, which money shall be paid over immediately to the treasurer of the trustees of common schools for the time being, and be applied to school purposes in said city."

The school law of 1851 (section 6) authorized the inhabitants of the several townships at their annual town meetings to raise, by tax or otherwise, in addition to the amount apportioned to their use, such further sum of money as they might deem proper for the support of public schools, not exceeding $3 for each child.

Section 7 directs that the money so raised shall be used for the establishment and maintenance of free schools. That it cannot be applied to the erection of school buildings is clearly shown by reference to section 11, which confers upon the inhabitants of school districts the exclusive right to raise money for that purpose.

Section 31 of the city charter of 1866 granted to the common council the same power to direct money to be raised for school purposes that was given to the inhabitants of the townships by section 6 of the general law of 1851, limiting the sum to be raised to $10 per scholar instead of $3.

In both instances the money voted is mingled with the moneys derived from the state fund, the limit being enlarged to $10 per scholar in the city charter to make the schools free for the whole or greater portion of the year. These provisions so similar in their character manifestly had a common object, and should receive a like interpretation. Under the school law of 1851 the inhabitants of the township, in their meeting assembled, could not, under section 6, or by force of any other provision in the law, vote moneys for the erection of school-houses. The right to make such appropriation could be exercised only by the inhabitants of the school district under section 11. Such further authority has not been bestowed upon the common council of Atlantic City, and it must, therefore, be presumed to have been withheld.

Money voted under the thirty-first section of the city charter, like money raised under the sixth section of the school law of 1851, is a sum authorized to be assessed annually, to be applied

. to annual current expenses. It cannot be diverted to those extraordinary purposes which are objects of occasional appropriations made under section 11 of the general law of 1851. In regard to these extraordinary outlays, there is nothing in this legislation which indicates a purpose to deprive the inhabitants of the school district, upon whom the burden falls, of the benefit of the statutory provision that they shall not be incurred unless authorized by a majority vote of such inhabitants.

The power in this respect is lodged in the inhabitants of the school district.

Under the general law of 1851 it was necessary to specify what sum was to be levied to erect buildings or purchase land, and the fund, when raised, could not be diverted, nor could the expenditure be in excess of it. This provision has been retained in the school law and has been strictly enforced by judicial decision. No power is conferred by the city charter upon the common council to apportion the school moneys between the different objects for which money may be raised, under the eleventh section of the law of 1851, or under the corresponding section of the school law now in force. The absence of such provision is a strong indication that the money was to be used exclusively for current expenses, and hence authority to apportion was unnecessary.

The supplement to the city charter, passed in 1872 (*P. L. of 1872 p. 590*) does not amplify the power of the school trustees to such an extent as to justify them in appropriating school moneys to any object other than that for which they are raised. They are vested with no power to apportion school moneys.

Section 2 of the said supplement provides that the school superintendent of said city shall be the school treasurer thereof, and receive from the tax collector all moneys collected by him for school purposes, and from the treasurer of Atlantic City all moneys he may receive for school purposes by virtue of any law of this state.

Section 3 enacts that the school treasurer shall pay out no moneys by him received for school purposes except upon a written order of the trustees of said city, or a majority of them, which order shall state the purpose for which it is given, and be

Lee v. School Trustees.

made payable to the person entitled to receive the money, and be by him or her endorsed.

The trustees here claim that this third section vests in them the power in their discretion to apportion the moneys in the school treasurer's hands to any of the purposes for which money may lawfully be raised under the general school law of the state. As has been shown, the common council are without the power to order money to be raised by tax for school-houses; moneys for that object must be raised as required by the school law. Therefore the authority asserted to exist in the trustees, implies the right to divert money from a use for which it has been expressly ordered by a vote of the inhabitants.

There is no language in this legislation which will bear such an interpretation. The statute does not say that the moneys received by the treasurer for school purposes shall be paid out for such uses as shall be authorized by the trustees; but they shall be paid out on the written order of the trustees, which order shall state the purpose for which it is given. The object of requiring the order to state the purpose is not to enable the trustees to divert the fund to an object different from that for which it is raised, but, on the contrary, to prevent them from doing so. Their order stating the purpose for which it is given, and the required endorsement thereof by the person to whom it is made payable, will at all times show whether the trustees have been guilty of misappropriation. This was intended to be a check upon, not an enlargement of their authority.

The act of March 31st, 1882, entitled "an act to enable cities to provide additional school accommodations where the same are necessary, and to borrow money for the purpose," does not apply to this case.

That act authorizes the borrowing of money for the purpose of erecting school-houses in certain cases. This is not a question of the power to borrow money, but an attempt to use money in hand for a purpose to which it is not legally applicable. In my judgment, the school trustees are without the authority which they claim to exercise, and they should be enjoined. The decree below should be reversed.

*Decree unanimously reversed.*